UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

vs.

PETER GHAVAMI, GARY HEINZ, and
MICHAEL WELTY,

                Defendants.

Crim. No. 1:10 Cr. 1217 (KMW)

---

## DEFENDANT GARY HEINZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas
49th Floor
New York, NY 10020
(212) 508-6100
*Attorneys for Defendant Gary Heinz*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ....................................................................... 1

PROCEDURAL BACKGROUND...................................................................... 2

ARGUMENT ................................................................................................... 4

I.     DEFENDANT POSES NO FLIGHT RISK OR DANGER TO OTHER PERSONS OR COMMUNITIES ........................................................... 4

II.    THIS APPEAL RAISES SUBSTANTIAL LEGAL QUESTIONS AND, IF SUCCESSFUL, WOULD RESULT IN REVERSAL............................. 5

     A.    Statute Of Limitations................................................................. 5

     B.    Due Process And Judicial Estoppel ........................................... 9

          1.    *The Government's Later Position Is Clearly Inconsistent With Its Earlier Position*................................................... 11

          2.    *The Facts At Issue Are The Same In Both Cases* ............ 12

          3.    *The Party To Be Estopped Convinced The First Court To Adopt Its Position* ...................................................... 13

          4.    *The Party Seeking To Assert An Inconsistent Position Would Derive An Unfair Advantage Or Impose An Unfair Detriment On The Opposing Party If Not Estopped*........................ 14

III.   THIS APPEAL IS NOT FOR PURPOSES OF DELAY ....................... 15

CONCLUSION................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

CASES

*Bd. of Regents of Univ. of State of N. Y. v. Tomanio*,
   446 U.S. 478 (1980)...............................................................................................1

*Drake v. Kemp*,
   762 F.2d 1449 (11th Cir. 1985) .......................................................................10

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)........................................................................................9, 11

*Nguyen v. Lindsey*,
   232 F.3d 1236 (9th Cir. 2000) .........................................................................12

*S.E.C. v. Citigroup Global Mkts., Inc.*,
   2012 WL 851807 (2d Cir. March 15, 2012) .....................................................7

*Smith v. Groose*,
   205 F.3d 1045 (8th Cir. 2000) .........................................................................10

*Stumpf v. Mitchell*,
   367 F.3d 594 (6th Cir. 2004) .....................................................................10, 12

*United States ex rel. O'Donnell v. Bank of Am. Corp.*,
   12 Civ. 1422, 2013 WL 4437232 (S.D.N.Y. Aug. 16, 2013) ...........................8

*United States v. Agne*,
   214 F.3d 47 (1st Cir. 2000)............................................................................5, 6

*United States v. Bank of New York Mellon*,
   11 Civ. 6969, 2013 WL 1749418 (S.D.N.Y. Apr. 24, 2013)............................8

*United States v. Bouyea*,
   152 F.3d 192 (2d Cir. 1998).............................................................................6

*United States v. Boyle*,
   283 Fed. Appx. 825 (2d Cir. 2007)................................................................10

*United States v. Carollo*,
   2011 WL 3875322 (S.D.N.Y. Aug. 25, 2011).............................................3, 8

*United States v. Carollo*,
   2011 WL 5023241 (S.D.N.Y. Oct. 20, 2011)............................................3, 4, 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*United States v. Christian,*
   342 F.3d 744 (7th Cir. 2003) ......................................................................9, 11

*United States v. D'Amico,*
   734 F. Supp.2d 321 (S.D.N.Y. 2010)...........................................................10, 11

*United States v. Hook,*
   195 F.3d 299 (7th Cir. 1999) ......................................................................9, 11

*United States v. Mullins,*
   613 F.3d 1273 (10th Cir. 2010) ..........................................................................6

*United States v. Ohle,*
   678 F. Supp. 2d 215 (S.D.N.Y. 2010).................................................................6

*United States v. Pelullo,*
   964 F.2d 193 (3d Cir. 1992)................................................................................6

*United States v. Randell,*
   761 F.2d 122 (2d Cir. 1985)................................................................................5

*United States v. Rosa,*
   17 F.3d 1531 (2d Cir. 1994)..........................................................................10, 11

*United States v. Rubin/Chambers, Dunhill Ins. Servs.,*
   831 F. Supp. 2d 779 (S.D.N.Y. 2011)..................................................................6

*United States v. Ubakanma,*
   215 F.3d 421 (4th Cir. 2000) ..............................................................................6

*United States v. Urso,*
   369 F. Supp. 2d 254 (E.D.N.Y. 2005) ............................................................10, 12

STATUTES

18 U.S.C. § 371..................................................................................................2, 11

18 U.S.C. § 1343...........................................................................................2, 11, 12

18 U.S.C. § 1349.......................................................................................................2

18 U.S.C. § 3143................................................................................................1, 4, 5

18 U.S.C. § 3293................................................................................................ passim

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

RULES

Federal Rule of Criminal Procedure 29 ........................................................................3

Defendant Gary Heinz respectfully moves this Court, pursuant to 18 U.S.C. § 3143(b), for release pending appeal of his judgment of conviction.

PRELIMINARY STATEMENT

On August 8, 2013, this Court entered a judgment of conviction against Defendant Gary Heinz on five counts of conspiracy to commit wire fraud, conspiracy to defraud and substantive wire fraud, and imposed a sentence of 27 months imprisonment, a $400,000 fine and a three-year term of supervised release.[1]  Heinz appeals his conviction and now respectfully seeks bail pending appeal from this Court because the prosecution was time-barred as a matter of law. Heinz's appeal will raise substantial questions of law likely to result in reversal, a new trial or a materially reduced sentence.  Although Heinz anticipates raising multiple arguments in appeal of his conviction, Heinz focuses in this motion on the government's failure to obtain an Indictment within the applicable limitations period.[2]

Statutes of limitation are fundamental protections under criminal law.  They protect the accuracy and clarity of testimonial evidence, and they protect individuals from the undue anxiety and economic cost of potentially defending against stale criminal charges.  The Supreme Court has long pronounced the important role that statutes of limitations serve in our judicial system. "On many prior occasions, we have emphasized the importance of the policies underlying state statutes of limitations.  Statutes of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 487 (1980).

---

[1] The judgment was amended on August 28, 2013, for correction of a clerical mistake.

[2] Heinz respectfully joins in and adopts the arguments of defendant Michael Welty concerning the statute of limitations and respectfully incorporates them by reference into this memorandum.  Heinz also respectfully joins in Welty's other arguments, as applicable to Heinz as a defendant and alleged co-conspirator in this case.

In this case, the charges uproot the fundamental protections of the statute of limitations and threaten to expand improperly the temporal limits on criminal liability. The government's evidence at trial related to certain municipal investment contracts that were awarded following a purportedly corrupted bidding process. Yet every one of the nearly thirty transactions presented at trial was completed outside of the applicable limitations period. To save its Indictment, the government relied upon an erroneous theory to support extending the limitations period – that a ten-year limitations period is applicable because the charged conduct "affects" a financial institution (18 U.S.C. § 3293(2)). The government's application of the ten-year statute of limitations has never been accepted by any court of appeals in the circumstances of this case. The government's reliance on the ten-year statute of limitations fails in light of the purpose of the statute and the absence of any sufficiently direct tie between the conduct charged and the supposed effect on the financial institutions involved in this case.

Additionally, the government should have been judicially estopped from asserting that a ten-year statute of limitations applies, based on the government's contrary assertions in related cases. At the very least, this appeal raises a "substantial question of law" and warrants release pending appeal.

## PROCEDURAL BACKGROUND

The defendants in this case were convicted of conspiring to wrongfully manipulate the bidding process for awarding various investment contracts and other transactions relating to municipal financing. The Indictment alleged in three counts that three different conspiracies existed. Count 1 alleged an 18 U.S.C. § 371 conspiracy to commit wire fraud. Counts 2 and 4 charged conspiracies to defraud under 18 U.S.C. § 1349. Counts 3 and 5 charged substantive wire frauds under 18 U.S.C. § 1343.

2

The initial Indictment, returned on December 9, 2010, did not include any allegation that any financial institution was "affected" or that 18 U.S.C. § 3293(2) could be applied to the charged conduct. After the defendants in the related *Carollo* case, 10-CR-654 (HB), moved to dismiss the Indictment on limitations grounds in that case, the government secured a Superseding Indictment in this case, and inserted provisions to each of Counts 1 through 5 alleging that the conduct charged "affected a financial institution" and caused financial institutions "to be susceptible to substantial risk of loss and caused actual loss." Ind. at ¶¶ 12, 24, 32, 34, 41, 49, 51, 58. The Superseding Indictment did not contain any further allegations concerning any risk of or actual loss to financial institutions.

Defendants moved to dismiss the Indictment for lack of timeliness, partially on the ground that an insufficient nexus existed between the alleged fraud and the harmful effect supposedly suffered by the subject financial institutions. This Court denied the motion. This Court stated that "for purposes of 18 U.S.C. § 3293(2), a wire fraud offense may be deemed to 'affect[] a financial institution' where it exposes such institution to a new or increased risk of loss, even if there is no actual or net loss." *United States v. Ghavami*, 10-CR-1217, 2012 WL 2878126, at *6 (S.D.N.Y. July 13, 2012) (Wood, J.). For the reasons stated below, we respectfully submit that the Court's ruling is incorrect and the ten-year statute of limitations is inapplicable.

Defendants subsequently moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The District Court denied the motion as to lack of timeliness on August 22, 2012.

The District Court sentenced Heinz to a term of incarceration on July 24, 2013, and ordered his voluntarily surrender on October 23, 2013.

3

## ARGUMENT

Release pending appeal is warranted when (i) the defendant "is not likely to flee or pose a danger to the safety of any other person or the community" if released; (ii) "the appeal is not for the purpose of delay;" and (iii) the appeal "raises a substantial question of law or fact likely to result in," among other things, reversal, a new trial or a materially reduced sentence. 18 U.S.C. § 3143(b)(1). The first factor is not reasonably in dispute. As to the second and third factors, Heinz will present on appeal several substantial legal and factual arguments in addition to the instant argument. To demonstrate a "substantial" question of law or fact, a defendant need only show that his argument is non-frivolous, or that the appeal could be decided either way. Among other arguments, this appeal will present a substantial question concerning the validity of the government's theory that the charged conduct affected certain financial institutions, within the meaning of Section 3293(2), by exposing them to the risk of financial loss and causing them to experience actual financial loss, in the form of civil monetary settlements, as well as attorneys' costs and fees associated with reaching resolutions of non-prosecution agreements. The government's position on 18 U.S.C. § 3293(2) is more than merely dubious: on similar facts, it has been rejected by another court in this district. *See United States v. Carollo*, 2011 WL 5023241 (S.D.N.Y. Oct. 20, 2011). This appeal is not for purposes of delay, but rather for purposes of reversing a conviction based on a time-barred prosecution.

## I.    DEFENDANT POSES NO FLIGHT RISK OR DANGER TO OTHER PERSONS OR COMMUNITIES

Defendant Heinz does not pose a danger to other persons or his community; nor is there any risk that he will flee. 18 U.S.C. § 3143(b)(1)(A). On December 1, 2006, the FBI arrived at Heinz's Jersey City apartment with a search warrant. Nearly six years passed until his trial and

4

conviction. Throughout, Heinz has fully cooperated with the judicial process and shown himself to be reliable and upstanding. Heinz is deeply committed to his family and to his fiancée, with whom he currently resides in San Antonio, Texas. He has dutifully appeared for every judicial proceeding, traveling first from New Jersey (in 2010 and early 2011) and then from San Antonio (since 2011). Heinz has been recognized by the Probation Department as a good candidate for voluntary surrender. He has kept all court appearances and has complied with all terms and conditions of his pretrial release, and he is not a flight risk. Nor is he a danger to the community. Heinz also has surrendered his passport. And this Court allowed Heinz to voluntarily surrender approximately three months after his sentencing. There can be no good faith basis for the government to claim any risk of flight here.

II.     THIS APPEAL RAISES SUBSTANTIAL LEGAL QUESTIONS
        AND, IF SUCCESSFUL, WOULD RESULT IN REVERSAL

        Thus, the only real issue on this motion is whether the appeal "raises a substantial question of law or fact likely to result in," among other things, reversal, a new trial or a materially reduced sentence. 18 U.S.C. § 3143(b)(1)(B). A question is "substantial" if it "is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quotation omitted). This appeal meets that standard.

        A.     Statute Of Limitations

        The critical question whether defendants' conduct "affected" a financial institution is a substantial one. As noted, Judge Baer ruled contrary to this Court's ruling. And more generally, various courts, in this district and others, have articulated different explanations of the statutory language. *See, e.g., United States v. Agne*, 214 F.3d 47, 52 (1st Cir. 2000) (reversing wire fraud

5

conviction because defendant's actions did not "affect" a financial institution when the consequence to the bank was "too remote"); *United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000) (concluding that increased penalty provision could not apply and remanding for resentencing because a wire fraud offense "affects" a financial institution "only if the institution itself [is] victimized by the fraud, as opposed to the scheme's mere utilization of the financial institution in the transfer of funds").

In this Circuit, the Court of Appeals requires a sufficiently direct nexus between the alleged fraud and the impact on the institution when analyzing Section 3293(2). *See United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 783 (S.D.N.Y. 2011) (applying "sufficiently direct" effect standard); *United States v. Ohle*, 678 F. Supp. 2d 215, 229 (S.D.N.Y. 2010) (same). Similarly, other courts of appeals have interpreted Section 3293(2) to require a close nexus between the conduct at issue and the purported "effect" on the financial institution. *See United States v. Mullins*, 613 F.3d 1273, 1278 (10th Cir. 2010) ("As some of our sister circuits have recognized, there may be some point where the 'influence' a defendant's wire fraud has on a financial institution becomes so attenuated, so remote, so indirect that it cannot trigger the ten-year limitations period because it does not in any meaningful sense 'affect' the institution") (citations omitted); *United States v. Agne*, 214 F.3d 47, 51 (1st Cir. 2000) ("[T]here must be some negative consequence to the financial institution to invoke the extended statute of limitations"); *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992) (ruling that the tie between the conduct and the financial institution cannot be "unreasonably remote").

In arguing for Section 3293(2)'s applicability, the government in its pre-trial papers pointed to UBS's and other financial institutions' settlements with various federal agencies and

state attorneys general. The bald existence of a settlement does little to create a "sufficiently direct" nexus between the conduct in this case and any loss suffered by these institutions. The Court of Appeals has recognized that there are "numerous factors that affect a litigant's decision whether to compromise a case" without an admission of liability. *S.E.C. v. Citigroup Global Mkts., Inc.*, 2012 WL 851807, at *4 (2d Cir. March 15, 2012). Settlements are a day-to-day feature of a corporation's legal decision-making processes. They are almost invariably driven by economic or public relations considerations. An institution may want to avoid the cost of protracted litigation, to bypass regulatory roadblocks to business transactions that an open judicial matter can create, or to steer clear of unwanted publicity. Simply, the institution assesses the pros and cons to remaining active in a case, and makes a business judgment to execute a settlement. This business decision can be, and often is, wholly collateral to the conduct charged in the action.

Further, when UBS and other financial institutions executed their settlements, they expressly accepted responsibility only for conduct of certain employees.[3] Nothing in the language of the settlements suggests that the firms acknowledge participation in or responsibility for the fraudulent conduct charged in this case. UBS, in its non-prosecution agreement with DOJ, expressly reserved the power to "[take] good faith positions in any litigation or regulatory proceeding." *In re: UBS AG, Non-Prosecution Agreement*, at 2 (May 4, 2011). The individual defendants had no insight into the reasons that their employer, UBS, opted to settle, or into why other institutions – some of whose employees remain uncharged to this day – also opted to settle.

---

[3] "The Company admits, acknowledges and accepts responsibility for the conduct of its former employees set forth in paragraph 5(a), and agrees not to make any public statement or take any position in litigation contradicting that admission, provided, however, that nothing in this paragraph precludes UBS from taking good faith positions in any litigation or regulatory proceeding." *In re: UBS AG, Non-Prosecution Agreement*, at 2 (May 4, 2011).

On similar facts, construing the same provision at issue here, Judge Baer precluded the government from using the statute because the government's allegations were insufficient. *United States v. Carollo*, 10 CR. 654 HB, 2011 WL 3875322, at *2 (S.D.N.Y. Aug. 25, 2011). Addressing Section 3293(2) squarely in *Carollo* – a case with deals, conduct and actors that overlap with those here – Judge Baer expressly rejected the use of that provision, ruling that "the government has not alleged that the financial institutions suffered any actual loss or at most the risk of loss is *de minimis*." *Carollo*, 2011 WL 3875322, at *2. In a later opinion, Judge Baer again rejected application of Section 3293(2), this time in response to the government's proffer of some of the very same non-prosecution and settlement agreements as those the government relied on here, ruling that "based on the record at the time of my decision on the motion to dismiss, and even if on that record it was appropriate to consider whether an increased risk of loss alone was sufficient to trigger § 3293, this case would be the wrong case in which to take such a leap." *Carollo*, 2011 WL 5023241, at *4.[4]

The case law in this Circuit is clear: Section 3293(2) applies only where there is a "sufficiently direct" nexus between the alleged fraud and the harmful effect supposedly suffered by the institution. The mere fact that a financial institution like UBS opted to settle one of numerous legal claims it faces on a day-to-day basis – without admitting wrongdoing – does not evidence a "sufficiently direct" nexus between the conduct in this case and any loss suffered by these institutions. Thus, this issue regarding the statute of limitations that Heinz intends to raise on appeal is a substantial one, and this statutory factor is satisfied.

---

[4] In two rulings on motions to dismiss, two judges in this district recently construed a different section of FIRREA to permit the government to prove an "effect" on a defendant itself. *See United States ex rel. O'Donnell v. Bank of Am. Corp.*, 12 Civ. 1422, 2013 WL 4437232 (S.D.N.Y. Aug. 16, 2013) (Rakoff, J.); *United States v. Bank of New York Mellon*, 11 Civ. 6969, 2013 WL 1749418 (S.D.N.Y. Apr. 24, 2013) (Kaplan, J.).

B.      Due Process And Judicial Estoppel

Gary Heinz's right to due process was violated when the government reversed course after consistently obtaining guilty pleas to charges of wire fraud that were subject to the five-year statute of limitations because they did not affect a financial institution.  Here, in the Superseding Indictment (and not the original Indictment), the government advanced a new and inconsistent theory in order to use the ten-year statute, 18 U.S.C. § 3293(2).  The government should be judicially estopped from using an incompatible theory to extend the statute of limitations in order to salvage a prosecution.  The original Indictment also did not allege that the conduct at issue "affected a financial institution," and, accordingly, the ten-year statute of limitations did not apply under 18 U.S.C. § 3293(2).  Under the doctrine of judicial estoppel and concepts of due process, the government should not have been permitted to argue that the ten-year statute of limitations applies to this case.[5]

"The doctrine of judicial estoppel is intended to protect the integrity of the judicial process." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  The doctrine is rooted in equity and, in essence, provides that a party who prevails on one ground in one lawsuit may not repudiate that ground in another suit.  *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (citation omitted); *Christian*, 342 F.3d at 747.

In criminal cases, the government's use of factually irreconcilable theories may be held to violate a defendant's Constitutional right to due process.  This Court has recognized that "some federal courts have been receptive to post-trial challenges to the government's use of factually

---

[5] Heinz raised the due process and estoppel issues pre-trial before the Court in a letter on behalf of all defendants from counsel for Ghavami, dated June 22, 2012.  The Court rejected the defendants' contentions in its decision and opinion addressing defendants' pre-trial motions, dated July 13, 2012, n. 10.

inconsistent theories . . . ." *United States v. D'Amico*, 734 F. Supp.2d 321, 355 (S.D.N.Y. 2010).

Although the Second Circuit has not yet addressed the issue, "other circuits have found that 'the

use of inherently factually contradictory theories violates the principles of due process." *United*

*States v. Boyle*, 283 Fed. Appx. 825, 826 (2d Cir. 2007) (summary order) (citing *Smith v.*

*Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000)) (other citations omitted).  Some Courts of Appeals

have ruled that "[t]here is a clear consensus that among the courts that have applied the doctrine

of judicial estoppel to criminal proceedings that prosecutors should be barred from arguing a

different theory of liability in a second prosecution only where the government's trial theories

are 'inherently factually contradictory' and thus are 'irreconcilable.'" *Urso*, 369 F.Supp.2d at

264; *see also Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004) (holding that due process was

violated when government sought conviction in a second trial based on theory irreconcilable

with government's theory at earlier trial); *Groose*, 205 F.3d at 1051-52  (same); *Drake v. Kemp*,

762 F.2d 1449, 1472 (11th Cir. 1985) (Clark, J., concurring) (same).

　　　"The Second Circuit has not decided whether – or on what basis – the government may

be barred from advancing factually inconsistent theories in different criminal trials." *D'Amico*,

734 F.Supp.2d at 352 (citing *Boyle,* 283 Fed. Appx. at 826); *United States v. Rosa*, 17 F.3d 1531

(2d Cir. 1994).  In *Boyle*, the defendant argued on appeal that "his due process rights were

violated because the government advanced a theory of criminal liability…that was factually

inconsistent with one pursued by the government in a previous action."  283 Fed. Appx. at 286.

The Second Circuit stated that it did not need to decide whether "'the use of inherently factually

contradictory theories violates the principles of due process'" because the two theories – two

enterprises working together to commit the bank robbery – were not inconsistent.  *Id.* (quoting

*Groose*, 205 F.3d at 1052); *see also D'Amico*, 734 F.Supp.2d at 352.  Similarly, in *Rosa*, the

10

defendant argued on appeal that the government should have been judicially estopped from presenting a factual theory it deemed inconsistent from a previous theory, but the Second Circuit held that the government's positions were not inconsistent and declined otherwise to address the issue of due process. 17 F.3d at 1548; *D'Amico*, 734 F.Supp.2d at 352. As a result, this appeal provides the Court of Appeals the opportunity to establish whether and how judicial estoppel should apply in criminal cases brought in the Second Circuit.

Judicial estoppel can apply when "(1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriments on the opposing party if not estopped." *Maine*, 532 U.S. at 750; *Christian*, 342 F.3d at 747; *Hook*, 195 F.3d at 306.

1.    *The Government's Later Position Is Clearly Inconsistent With Its Earlier Position*

The government's position that a ten-year statute of limitations is applicable is at odds with its allegations in the Informations filed against cooperating witnesses Mark Zaino, Doug Campbell, Doug Goldberg, James Hertz, David Rubin, Matt Rothman and Alex Wright.[6] In the cooperating witness Informations, and in the original Indictment of Heinz, the same offense conduct charged against Heinz was not alleged to affect a financial institution. Indeed, the government asserted that a twenty-year maximum sentence applied to each cooperating witness who agreed to plead guilty to wire fraud, in violation of 18 U.S.C. § 1343. In order for the

---

[6] Wright pled guilty two weeks before Heinz's trial to a one-count Information that charged conspiracy to commit wire fraud in June 2002, in violation of 18 U.S.C. § 371. Neither Wright's Information nor his plea agreement alleged that the conduct affected a financial institution. During Wright's plea hearing, in response to questioning from the court about the statute of limitations, the prosecutor nonetheless argued that Section 3293 applied to Wright's conduct. Wright Plea Tr. at 14-15.

11

maximum sentence to be twenty years, rather than thirty years, the government necessarily took the position that the wire fraud violation did not affect a financial institution.[7]

It is not reconcilable or compatible with fundamental fairness or due process for the same offense scheme <u>not</u> to affect a financial institution for one class of defendants (government cooperating witnesses) but to do the opposite with respect to another class of defendants (non-government cooperating witnesses). The government's prosecution theories are "inherently factually contradictory" and thus "irreconcilable." *See Stumpf*, 367 F.3d at 611 (holding that due process was violated when government sought conviction in a second trial based on theory irreconcilable with government's theory at earlier trial); *Urso*, 369 F. Supp.2d at 264 (holding that due process violation is implicated when there is "a clear and categorical repugnance between the government's two theories of the case"); *Nguyen v. Lindsey*, 232 F.3d 1236, 1241 (9th Cir. 2000) (finding a due process violation when prosecution's theory is inconsistent in a fundamental way). The government should have been prohibited from asserting that Heinz's conduct "affected a financial institution" because before the Superseding Indictment was returned the government did not assert that the same conduct "affected a financial institution" in <u>any</u> of the related prosecutions until it filed the Superseding Indictment in September, 2011.

        2.      *The Facts At Issue Are The Same In Both Cases*

The same wire fraud schemes at issue in Heinz's case were at issue in cooperating witness cases. The wire fraud offense conduct in Heinz's case is the same conduct to which cooperating witnesses pled guilty. Cooperating witnesses Campbell, Goldberg, Hertz, Rothman and Zaino all were charged with conspiracy to commit wire fraud and substantive wire fraud, as

---

[7] The wire fraud statute contains, among its elements, a provision that expressly asserts that if the violation "affects a financial institution," a higher maximum term of imprisonment (thirty years instead of twenty years) and fine ($1,000,000) "shall" result. 18 U.S.C. § 1343. Thus, if a twenty-year maximum applies, it necessarily follows that the wire fraud did not affect a financial institution.

was Heinz. They testified at length at Heinz's trial about those very wire fraud schemes. *See, e.g.,* Tr. at 509-511; 2357-2359. The government has characterized the offense conduct of Heinz and its cooperating witnesses as a scheme with providers and brokers to manipulate municipal bond reinvestment bidding procedures and defraud the United States, municipalities and the Internal Revenue Service.

The factual underpinnings for the original and Superseding Indictments in this case also are the same. To the extent the Superseding Indictment identifies a new act or event regarding the charged scheme or offense conduct of any defendant or co-conspirator, none bears on whether the violation purportedly affected a financial institution.

      3.    *The Party To Be Estopped Convinced The First Court To Adopt Its Position*

Before filing the Superseding Indictment, the government consistently brought wire fraud and wire fraud conspiracy charges that implicated the five-year statute of limitations for its cooperating witnesses' guilty pleas. The cooperators' offenses were not alleged to have affected a financial institution. The government did not claim otherwise; it did not plead or otherwise assert that the violation affected a financial institution. The government did, however, assert the other elements of the wire fraud statute sufficiently to plead the standard offense (for substantive and conspiracy charges). In addition to its Informations, the government also consistently took the same position in its plea agreements with its cooperating witnesses. Likewise, the cooperating witness's allocutions did not include acknowledgements that their conduct "affected a financial institution." Moreover, the courts that took each cooperating witness plea consistently advised the cooperating witnesses who were pleading guilty to wire fraud that they faced a maximum sentence of imprisonment of twenty years – the applicable penalty for a wire

13

fraud that did not affect a financial institution.  The government did not seek to modify or correct the courts' advice of rights.[8]  *See, e.g,* Campbell Plea Tr. at 14, 28-29 (Exhibit A hereto); Zaino Plea Tr. at 8-9, 14 (Exhibit B hereto); Hertz Plea Tr. at 6 (Exhibit C hereto); Goldberg Plea Tr. at 13; Rothman Plea Tr. at 22; Rubin plea Tr. at 18.

Based on all the information before them, including information the government provided, the guilty pleas were accepted.  *See, e.g.,* Campbell Plea Tr. at 19, 22, 25 (Exhibit A hereto); Zaino Plea Tr. at 14 (Exhibit B hereto); Hertz Plea Tr. at 14-15 (Exhibit C hereto)[9]; Goldberg Plea Tr. at 20-21.

    4.    *The Party Seeking To Assert An Inconsistent Position Would Derive An Unfair Advantage Or Impose An Unfair Detriment On The Opposing Party If Not Estopped*

The government's ultimate assertion that the ten-year statute applies to this case has clearly worked an unfair detriment on Heinz, and has violated his due process rights.  As noted, the government repeatedly did not assert that the conduct alleged in related cases affected a financial institution, but then the government changed course in the Superseding Indictment.  Heinz was entitled to rely on the protections of the applicable statute of limitations and not be subject to shifting government positions as part of prosecutorial tactics to apply a longer statute to events that occurred nearly a decade or longer ago — as of December 2010, when the first Indictment was returned.  He was entitled to rely on the same statute of limitations that applied to

---

[8]  The Informations and plea agreements are publicly filed in this case, but transcripts of the plea proceedings are not.  To avoid burdening the court with stacks of exhibits, only a few excerpted plea transcripts are included as exhibits to this submission.  However, additional exhibits of Informations, plea agreements and plea proceeding transcripts can be readily provided to the Court if the Court would find them helpful.

[9]  During Hertz's guilty plea proceeding, the prosecutor provided a detailed description of the elements of wire fraud, but omitted the element that the violation affected a financial institution.  Hertz Plea Tr. at 14-15 (Exhibit C hereto).  The prosecutors similarly omitted the "financial institution" element in the offense summaries they provided during Rothman's and Rubin's guilty pleas.  *See* Rothman Plea Tr. at 20-21; Rubin Plea Tr. at 17.

14

the co-conspirators charged by the government for the same schemes. That the government erred in bringing the original Indictment does not qualify as a license to manufacture an inconsistent theory in order to bring another indictment.

Accordingly, the issue of whether Heinz's due process rights were violated on the facts and circumstances of the government's actions constitutes a substantial question of law for the Second Circuit – one that is ripe for the Court to decide.

III.     THIS APPEAL IS NOT FOR PURPOSES OF DELAY

Lastly, this appeal is not for purposes of delay. The appeal raises a substantial question of law for which the answers thus far provided in this circuit are, at best, unsettled.

CONCLUSION

For the foregoing reasons, Defendant Heinz respectfully requests that the Court permit him to remain released pending appeal, subject to his present bail conditions.

Dated:  New York, New York
        September 16, 2013

                              Respectfully submitted,

                              BRACEWELL & GIULIANI LLP

                              By: _____
                                    Marc L. Mukasey
                                    Jonathan N. Halpern
                                    Philip J. Bezanson

                              1251 Avenue of the Americas
                              New York, NY 10020, 49th Floor
                              (212) 508-6100
                              *Attorneys for Defendant Gary Heinz*

15