

Texas
New York
Washington, DC
Connecticut
Seattle
Dubai
London

Jonathan N. Halpern
Partner

212.508.6153 Office
212.938.3853 Fax

Jonathan.Halpern@bgllp.com

Bracewell & Giuliani LLP
1251 Avenue of the Americas
49th Floor
New York, New York
10020-1100

October 11, 2013

<u>By Fax 212-805-7900</u>

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:     **United States v. Ghavami, et al., S1 10 Cr. 1217 (KMW)**

Dear Judge Wood:

We respectfully submit this letter on behalf of defendant Gary Heinz to bring to the Court's attention our serious concerns regarding discovery irregularities involving hundreds of thousands of CDR-system emails, in connection with the above-referenced case. Although we continue to attempt to learn all relevant information – we have had ongoing communications with the government during the past month – and expect to learn more, we feel compelled to write to Your Honor at this point in light of the October 23rd date by which Mr. Heinz is scheduled to surrender voluntarily to prison authorities.

In late August/early September, counsel for Mr. Heinz and for co-defendants Ghavami and Welty learned (not from the government) of the <u>existence</u> of approximately 300,000 non-privileged emails that were generated on CDR's system as of November 2006. The revelation arises a year after the verdict in this case. In response to defense inquiries, the government responded within the last two weeks that approximately 300,000 non-privileged emails were stored on CDR's contact database using a "Goldmine" system. Goldmine is a type of proprietary software program. According to the government, the emails existed in DBF format (*i.e.*, database file) and could not be reviewed without using specific Goldmine software and converting the DBF files to a readable format. We understand that the government has possessed approximately 270,000 of those emails since November 15, 2006, when government agents executed a search warrant on CDR's offices and made forensic copies of the CDR data. The revelation of the existence of these emails, which was unknown to defense counsel before September 2013, is particularly disconcerting for several reasons.

First, the prosecutors apparently did not read the CDR system-generated emails either before the trial or the verdict. The government's failure to convert data in its possession to

BRACEWELL
&GIULIANI

Honorable Kimba M. Wood
October 11, 2013
Page 2

readable files and then review hundreds of thousands of emails directly involving CDR and its employees – including four testifying cooperating witnesses and key participants in criminal schemes that were critical components of the government's prosecution – raises issues as to whether the government has satisfactorily discharged its Brady, Giglio and other discovery obligations.

Second, the government acknowledges that approximately 270,000 emails were not produced to the defense in a readable format. So far, the government has pointed us to a production dated July 8, 2011 as including the Goldmine-related data from CDR, but that production, as the government has informed us, included only 153 DBF files (among the more than nearly 200,000 other files in the production that are unrelated to the recent revelation). Based on the government's representations, we understand that the 153 DBF files correspond to the CDR emails, but we still do not know how many of the 270,000 emails are encompassed in those DBF files, even if the data is converted. The defendants' electronic data vendor also is unable to determine the relation between the 153 DBF files and the CDR emails, but notes that the 153 DBF files could account for only a small fraction of the 270,000 emails. We await further communication from the government concerning whether any other data corresponding to the 270,000 emails ever was produced to defendants and, if so, the format in which any such data was produced.

Third, the government provided no notice that readable emails corresponding to the 153 DBF files existed in any form in its July 8 transmittal letter, in the production statistics and data report included with the letter or in the produced electronic files themselves. There was no notice that any special process was required to create readable text from the material that the government produced. Moreover, the government did not inform the defense that the data needed to be converted in order to be read.

The government recently has informed the defense that it has used instructions from a commercial website to search for, identify and convert the emails from the Goldmine data. The government failed to provide any such notice before or during trial – and not until approximately 10 days ago. Even now, with those instructions, our electronic data vendor has been unsuccessful in attempting to convert the 153 DBF files into emails.

Fourth, after searching through the July 8, 2011 production, the defendants' electronic data vendor discovered that the 153 DBF files contained in that production correspond to text files that state, "[t]ext could not be extracted." Our vendor has advised us that this comment indicates that there was no readable content. The government provided no exception or error report, or any other notice that there was readable text. In addition, according to our vendor, the metadata for the text files associated with the 153 DBF files shows that the government attempted, unsuccessfully, to convert the data to readable form on June 27-28, 2011. The

BRACEWELL
&GIULIANI

Honorable Kimba M. Wood
October 11, 2013
Page 3

government did not inform the defense of this failure when it made its production approximately 10 days later. Without notice from the government regarding the issues surrounding the 153 DBF files, the defendants' electronic data vendor had no reason to know that readable data for these 153 DBF files could be developed (among the nearly 200,000 documents in the July 8, 2011 production). In short, the government's conduct had the effect of masking the potential to discover electronic data in readable format (emails, contacts, etc.). Defendants were thus deprived of reviewable discovery and potentially material and exculpatory evidence. Neither defendants nor their electronic data vendor could have been expected to divine the existence of the CDR emails under the circumstances.

The role of CDR and its employees in the government's prosecution cannot be overstated. Mark Zaino, a former CDR employee, was a principal government cooperating witness. Other important witnesses at trial included Doug Goldberg and Matt Rothman, former CDR employees, and David Rubin, CDR's founder and long-term president. They testified extensively about the various fraudulent schemes the government alleged, and Mr. Zaino, in particular, also testified about particular documents and practices he asserted that Mr. Heinz engaged in, as well as his interpretation of phrases, terms, and deal components of matters he himself did not personally participate in. All were cooperating witnesses, and CDR itself also entered into a cooperation agreement with the government. Other CDR employees, including Stewart Wolmark, Dani Naeh, and Evan Zarefsky, did not testify at trial but played important roles in the government's presentation of its case.

We do not currently know what, if any, Brady, Giglio or other significant evidence is contained within the 270,000 CDR emails. The government has not told us. Apparently, the government has not reviewed the emails. An appropriate period of time is necessary for the defense to obtain the (readable) emails and review them to determine whether a motion for a new trial, pursuant to Fed. R. Crim. P. 33, is warranted. Upon the conclusion of our review, we will be prepared to report our assessment to the Court.

We hope soon to learn additional information from the government and then to provide a supplemental submission after we have worked with our vendor and the government further.



Honorable Kimba M. Wood
October 11, 2013
Page 4

However, in light of Mr. Heinz's impending surrender date and the developments we have recently learned, the facts and circumstances supply additional, separate grounds to extend Mr. Heinz's continued release on conditions of bail, and we respectfully request such relief here.

Respectfully submitted,

Bracewell & Giuliani LLP

Jonathan N. Halpern

cc:     Kalina Tulley, Esq.
        Jennifer Dixton, Esq.
        John Van Lonkhuyzen, Esq.
        (by email)

        Charles Stillman, Esq.
        James A. Mitchell, Esq.
        (by email)

        Gregory Poe, Esq.
        Preston Burton, Esq.
        (by email)