BRACEWELL
&GIULIANI

Texas
New York
Washington, DC
Connecticut
Seattle
Dubai
London

Jonathan N. Halpern
Partner

212.508.6153 Office
212.938.3853 Fax

Jonathan.Halpern@bgllp.com

Bracewell & Giuliani LLP
1251 Avenue of the Americas
49th Floor
New York, New York
10020-1100

November 24, 2013

BY ECF AND FAX 212.805.7900

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  **United States v. Ghavami, et al., S1 10 Cr. 1217 (KMW)**

Dear Judge Wood:

We respectfully submit this letter to notify the Court that at approximately 6:30 p.m., Friday, November 22, 2013, less than two hours after we submitted our letter to the Court on behalf of defendant Gary Heinz, the government disclosed that there were thousands of additional CDR emails that had not been produced to the defense.  The government stated that the previous week it had received more than 9,000 additional CDR emails, that these 9,000 emails were being sent to the defense and that an additional production of an indefinite number of emails might be made the following week.  (*See* Gov't Ltr, dated November 22, 2013, and accompanying spreadsheet, copies of which are attached hereto as Exhibits A and B.) ("Gov't Ltr").  The government's late disclosure, with no advance notice, further underscores our serious concerns and the necessity of deferring Mr. Heinz's report date.  Mr. Heinz and his counsel should have the opportunity to evaluate the new productions of CDR emails before Mr. Heinz is required to be in custody.

Apart from revealing the existence of additional, undisclosed CDR emails, the government's letter provides relatively little new information.  The government's letter restates some information already provided, offers new explanations that are inconsistent with its previous reporting, makes disputed claims concerning discovery produced in 2011 and remains materially incomplete.  Most of the outstanding questions posed in Mr. Poe's October 16th letter to the government remain unanswered.  The government admits that it is still seeking information and "continue[s] to work on obtaining responsive information as to other questions." (Govt Ltr, at 3.)  It concludes that it "continues to review this matter" and "expect[s] to be able to provide more information in the near future." (Govt Ltr, at 5.)  Counsel for the defendants intend to address any unresolved issues and the disputed statements in the government's letter after the government completes its review and provides responses to Mr. Poe's October 16th letter.

#4417870.2



The Honorable Kimba M. Wood
November 24, 2013
Page 2


        For these additional reasons, in addition to the reasons stated in our November 22 letter, Mr. Heinz respectfully requests that his reporting date be deferred from December 3, 2013.

                      Respectfully submitted,

                      Bracewell & Giuliani LLP


                      Jonathan N. Halpern

cc:     Kalina M. Tulley, Esq.
        John L. Van Lonkhuyzen, Esq.
        Jennifer M. Dixton, Esq.
        (by email)

        Charles A. Stillman, Esq.
        James A. Mitchell, Esq.
        (by email)

        Gregory L. Poe, Esq.
        Preston Burton, Esq.
        (by email)

#4417870.2

# Exhibit A



**U.S. Department of Justice**

Antitrust Division

---

*New York Field Office*

*26 Federal Plaza*                                          *212/335-8037*
*Room 3630*
*New York, New York 10278-0004*                            *FAX 212/335-8023*

November 22, 2013

<u>By Federal Express</u>

Charles Stillman, Esq.                    Gregory L. Poe, Esq.
James A. Mitchell, Esq.                   Poe & Burton PLLC
Stillman & Friedman, P.C.                 1030 15th Street, N.W.
425 Park Avenue                           Suite 580 West
New York, NY 10022                        Washington, D.C. 20005

Marc L. Mukasey, Esq.
Jonathan Halpern, Esq.
Bracewell & Giuliani LLP
1251 Avenue of the Americas, 49th floor
New York, New York 10020-1104

      Re:   <u>*United States v. Ghavami, et al.,*</u> S1 10 Cr. 1217 (KMW) (SDNY)

Dear Counsel:

      We received from CDR late last week a supplemental production of converted, processed, non-privileged emails from CDR's contact database and email system called "Goldmine." We have enclosed, on a hard drive labeled "Post Trial GHW 004," a copy of these additional converted, processed, non-privileged Goldmine emails.[1] This production is, like our October 15, 2013 production, an export from our database, with tif and text files and standard load files. There are approximately 9,003 records of converted, processed, non-privileged emails in this production. For your convenience, we have included on the drive a spreadsheet in pdf format listing the various custodians, and for each, the original physical media name, the volume name, begin and end bates, number of records, number of images, number of native files, number of extracted / OCR text files, and the volume size in gigabytes. The data in this spreadsheet was provided to the Government by CDR. A printout of this spreadsheet is also enclosed with this letter.

      Please be advised that CDR informs us that a further, final production will be made to the Government; we were originally advised that that production would be made this week, and were intending to produce the two productions to you together, but we

---

[1]     The three drives have DOJ labels and serial numbers as follows:  DOJ#: L 73662, serial number: Z3TA1NCS; DOJ#: L 73641, serial number: Z3TA1MX7; and DOJ#: L 73633, serial number: Z3TA08VF.

*Ghavami* Defense Counsel
Production of additional converted, processed, non-privileged "Goldmine" emails
November 22, 2013

now expect the further production next week. We will produce the additional materials to you promptly after we receive them.

We also wish to advise you of a perhaps idiosyncratic feature of the Goldmine system, in case you are not already aware of it in reviewing the converted, processed, non-privileged emails we have produced to you. As we have been advised, Goldmine handles attachments differently than does Microsoft Outlook. In Outlook, if a person attaches a file to an email and sends the email, the person is sending (embedded in the email) a copy of the attached file that remains static, even if the sender later changes the original source file of the attachment on his or her hard drive or server. Goldmine, however, internally tracks attachments by "pointers," which point back from the email to the original document on the sender's hard drive or server. The pointers do not point to a static or fixed copy of the attachment that was sent out with the email. So, for example, if someone using Goldmine sends out an MS Word document such as bid specifications by attaching it to an email from the Goldmine system, and then the sender (or potentially another internal user of the same Goldmine system) later goes back to the original Word document on the sender's drive or server and edits that document, say by inserting a bid summary, when the sender (or a reviewer) later pulls up the sent email in Goldmine, the email attachment function points back to the now-revised Word document with the later-added edits or information, in this example a bid summary. There isn't a static copy of the attachment as of the time the email is sent that is stored within Goldmine with or attached to the original sent emails. Therefore, your reviewers may, within Goldmine, pull up a sent (and perhaps received) Goldmine email and the attachment may have a last-modified date later than the time stamp of the Goldmine email. Thus, the attachment would not accurately reflect the attached document as it existed when the email was sent.

This feature should not affect the attachments to received emails sent from a Goldmine sender to a recipient using a system such as Outlook outside the CDR Goldmine system. Those "other-side" emails should have a static copy of the attachment as it existed at the time it was sent. Thus, it is possible that a single email with an attachment, sent by a Goldmine user to someone outside Goldmine (say, at UBS), might look as if it had two different attachments. The Goldmine email could point to a later version of the attachment (if it had been revised after the email was sent), while the UBS email would have a copy of the attachment as it existed at the time the email was sent. We are advised that this is not an artifact of the conversion and processing of the Goldmine emails, but of the structure of the Goldmine program itself.

The following comparison may constitute an example of this feature. Compare the converted, processed CDR Goldmine email and attachment, CDR-BoA-00197197 (attachment at CDR-BoA-00197198), with the "other side" UBS email and attachment UBS_EM_00326313 (attachment at UBS_EM_00326314). The email, from Doug Goldberg to Gary Heinz and Mark Zaino, is dated August 1, 2003 (the times appear to differ for the reason described in one of our prior letters), and the two copies appear identical (though the attachment is shown by its file path on the CDR copy and by a thumbnail on the UBS copy). The attachments, however, differ – compare the cover date

2

*Ghavami* Defense Counsel
Production of additional converted, processed, non-privileged "Goldmine" emails
November 22, 2013

and authors, the number of pages, and the page breaks. It appears, from the DateSaved metadata for the CDR copy of the attachment, that the original of the attached document was last edited and saved on August 4, 2003, which is three days after the email was sent. Thus, the UBS copy of the email attaches the attachment as sent, while the CDR copy of the email is a later edited version.

Finally, we are able to provide some information at this point in response to questions raised in Mr. Halperin's letter to the Court of October 11, 2013 (Doc. 421), and Mr. Poe's letter to the Government of October 16, 2013 (a copy of which is Doc. 493-4). We continue to work on obtaining responsive information as to other questions.

In the October 16 letter (page 1), you ask a number of questions about the October 15, 2013 production of approximately 317,731 converted, processed, non-privileged Goldmine emails, particularly how that production compares to the production in the *Murphy* case, and which portion traces to the search at CDR and which portion traces to the back-up drive provided to the Government by Dani Naeh in 2013.

First, the October 15, 2013 production in this case was substantially identical to a production in the *Murphy* case. That is, after the Government received the approximately 317,731 converted processed, non-privileged emails from CDR during the period from August 29 to September 5 of this year, we had our technical staff load that production into our review database platform, and then export the production. The Government exported and produced to you the same materials that we had exported and produced to the *Murphy* defense team. Thus, what you received should be identical to what they received. In addition, because loading, exporting and appropriate quality control takes some time, and given the impending trial date in the *Murphy* case, we made copies of the materials we received from CDR upon receipt, and produced those copies to the *Murphy* defense in advance of the regular discovery production. We did not provide you straight copies of those incoming materials, the contents of which would be duplicative of what you did receive. If, nevertheless, you wish to receive such duplicative copies, we could provide them.

Second, you also asked for confirmation that approximately 270,000 files, or 90% of the converted, processed, non-privileged materials produced on October 15, 2013, traced back to materials seized from CDR, while 10% of the files traced back to the Naeh materials, which were first produced to the Government in any form in April 2013. Our initial report or estimate that approximately 90% of the approximately 317,000 converted, processed, non-privileged Goldmine emails traced back to the seizure at CDR in November 2006, and that approximately 10% traced back to the Naeh materials, was based on a simple and rough comparison of the number of records for Naeh as a custodian (33,889) with the number of total number of records for all custodians (317,731), on the theory that he would have only provided materials for which he was custodian. The estimate was not based on any analysis of the records or files.

3

*Ghavami* Defense Counsel
Production of additional converted, processed, non-privileged "Goldmine" emails
November 22, 2013

We have now asked CDR's counsel to query appropriate IT personnel associated with CDR's conversion and processing of the Goldmine materials whether they can identify which emails trace back to which source – the CDR seizure or the Naeh back-up. The initial report we received that while they did not think they could trace back any individual converted, processed email back to a particular Goldmine-related or Goldmine-underlying database file, they thought they might, depending on the steps of the conversion, be able to identify, perhaps by range(s) of Bates number or DocId, which batches of emails traced back to which source, the seized CDR materials or the Naeh-provided materials. We will update you when we receive further information.

Third, in the course of discussing the 153 files initially identified to you as Goldmine related or underlying (in our letter of September 30, 2013), the defense suggests that the files were manipulated and put the defense in a worse position than the Government. *See* Oct. 11 Letter, at 2-3; Oct. 16 Letter, at 2. Such is not the case. In the course of preparing the productions that made up GHW-006, produced to you on July 8, 2011, the Government did, as is standard, try to extract text from native files that did not have text files in the associated records. When successful, the text files were provided to you, when not successful, the record indicates that "Text could not be extracted." However, as your IT staff will no doubt advise you if they have not already, the native files were also produced to you in those productions. Thus, the defense had available to review exactly what the Government had available to review.

Further, any deficiencies identified by your IT vendor now could have been identified before trial. The Goldmine related and underlying files in your possession were produced to you in July 2011. That production included the native files from the Government's system, and you could have examined them as you saw fit. You also had the "Text could not be extracted" messages, and could have found them as easily at that time as you do now. Your vendor was certainly vigorous in identifying perceived deficiencies in the Government's various discovery productions prior to trial, as evidenced in numerous communications between the defense and the Government during the discovery phase of this case.

In addition, the statement in the letters of October 11 (page 2) and 16, 2013 (page 1), that none of the Goldmine emails were produced in readable format pre-trial is not completely accurate. As we have advised you, "other side" copies of many of the Goldmine emails involving the defendants were produced before trial in other email productions. These "other side" emails provided you with all the information in the corresponding Goldmine email. *See* our letter of October 21, 2013, and the accompanying spreadsheets.

Finally, in our letter of September 30, 2013, we provided a spreadsheet identifying 153 non-converted files which we had at that time identified as presumptively related to or underlying Goldmine, as well as production information. This identification of 153 files was an initial effort, based on limited information. Since that time, our IT staff continues its efforts to identify additional Goldmine-related or Goldmine-underlying

4

*Ghavami* Defense Counsel
Production of additional converted, processed, non-privileged "Goldmine" emails
November 22, 2013

files in our database, and to determine whether those files were produced to you before trial.   We expect to be able to provide more information in the near future.

   We continue to review this matter.  In the meantime, please do not hesitate to contact us if you have any questions.

        Sincerely,

        KALINA M. TULLEY
        JOHN W. VAN LONKHUYZEN
        JENNIFER M. DIXTON
        Trial Attorneys

Enclosures

# Exhibit B

CDR's Converted, Processed, Non-Privileged, Goldmine Email Productions
Volume 3: Received by DOJ Nov. 14-16, 2013

| Custodian | Physical Media Name | Volume Name | Begin Bates | End Bates | Number of Records | Number of Images | Number of Native Files | Number of Extracted / OCRed Text Files | Volume in GB Size |
|---|---|---|---|---|---|---|---|---|---|
| Moser, Amy | CDR003 | CDR003-040 | CDR-BoA-00682490 | CDR-BoA-00682499 | 6 | 10 | 0 | 6 | 0.000313 |
| Edmond, Ann | CDR003 | CDR003-041 | CDR-BoA-00682500 | CDR-BoA-00682519 | 14 | 20 | 0 | 14 | 0.000566 |
| Kaye, Barry | CDR003 | CDR003-042 | CDR-BoA-00682520 | CDR-BoA-00682553 | 18 | 34 | 0 | 18 | 0.001348 |
| Rosenbaum, Brent | CDR003 | CDR003-043 | CDR-BoA-00682554 | CDR-BoA-00686232 | 879 | 3,679 | 70 | 879 | 0.001953 |
| Nash, Dani | CDR003 | CDR003-044 | CDR-BoA-00686233 | CDR-BoA-00688632 | 1,195 | 2,400 | 9 | 1,195 | 0.096316 |
| Rubin, David | CDR003 | CDR003-045 | CDR-BoA-00688633 | CDR-BoA-00741001 | 6,864 | 52,369 | 214 | 6,864 | 0.006836 |
| CDR | CDR003 | CDR003-046 | CDR-BoA-00741002 | CDR-BoA-00741028 | 27 | 27 | 0 | 27 | 0.000303 |
| **TOTALS FOR THIS VOLUME** | | | | | **9,003** | **58,539** | **293** | **9,003** | **0.110635** |